## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **CORY DESHAWNE CLINE,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 22-CV-4009-JAR-TJJ** |
| **ANDREW SEAL, et. al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Pro se Plaintiff Cory Deshawne Cline asserts that Kansas City, Kansas police officers unlawfully searched a residence at which he was present on January 30, 2020.  Plaintiff was arrested and charged with possession of methamphetamines.  He contends that his civil rights were violated because the search of the residence was done without a search warrant, and numerous individuals conspired against him to fabricate a search warrant and prosecute him. In this case,[1] he filed suit against nineteen Defendants asserting numerous claims.   Before the Court are Defendants' Motions to Dismiss (Docs. 37, 42).  The motions are either fully briefed, or Plaintiff did not respond to them.  For the reasons stated below, the Court grants the motions.

### I.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative

---

[1] Plaintiff has filed four cases in the District of Kansas relating to the events surrounding the search, his arrest, and prosecution against no less than 30 Defendants.  *See* Nos. 21-3033-SAC, 20-3136-TC-TJJ, and 20-4010-JAR-TJJ.  No. 21-3033 was dismissed, No. 20-3136 is currently pending before Judge Crouse, and the remaining two cases are currently pending before the undersigned.  The two cases that are pending before the undersigned, 20-4009 and 20-4010, have been consolidated for all pretrial matters and for trial.  Doc. 44.

level"[2] and must include "enough facts to state a claim for relief that is plausible on its face."[3] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[5]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[8]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10]  "A claim has facial plausibility when the plaintiff pleads factual content

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

[3] *Id.* at 570.

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[6] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[8] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[9] *Id.* at 678–79.

[10] *Id.* at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

Because Plaintiff proceeds pro se, some additional considerations frame the Court's analysis.  The Court must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which applies to attorneys.[12]  "Nevertheless, [Plaintiff] bears 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'"[13]  The Court may not provide "additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[14]  Additionally, a pro se litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[15]

## II.    Factual Background

Plaintiff filed his Complaint on February 9, 2022,[16] and he filed an Amended Complaint on March 8, 2022.[17]  Plaintiff asserts numerous claims against nineteen Defendants in the Amended Complaint.  Defendants include: sixteen Kansas City, Kansas police officers (Andrew Seal, Chad Cowher, Dylan Passinese, Paula Vallejo, Eric Ibanez, Jacob Dent, David Weaver, Brian Graham, Robert Twitchel, Wesley Lundgren, Christopher Blake, Lewis Edwards, David Hopkins, Kyle Wolf, Chad Williams, and Michael Martin); the Kansas City, Kansas Police Department of Wyandotte County ("KCKPD"); the Unified Government of Wyandotte County;

---

[11] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[12] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (citation omitted).

[13] *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[14] *Whitney*, 113 F.3d at 1174 (citing *Hall*, 935 F.2d at 1110).

[15] *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[16] Doc. 1.

[17] Doc. 3-4.  Plaintiff's complaint is 62 pages long; 38 pages of it consist of state court records relating to his Kansas City, Kansas criminal case (2020-CR-000129).

and Wyandotte County District Court Judge Tony Martinez.  Plaintiff alleges that a search of a residence at which he was present was improper and illegal.  He contends that Defendants conspired to falsely charge him with possession of methamphetamine in the criminal case of 2020-CR-00129 in Wyandotte County District Court.

Specifically, Plaintiff contends that on January 30, 2020, Kansas City, Kansas police officers searched and seized persons and items from 604½ Lowell Avenue without a search warrant and/or probable cause.  He claims that the January 29, 2020 search warrant affidavit and search warrant were fabricated and created by Officer Ibanez and Judge Martinez six months after the January 30 search on July 30, 2020.  Plaintiff also contends that Judge Cahill, Maurice Brewer, and Anthony Russo directed and agreed to the fabrication of the search warrant.[18] Plaintiff claims that the documents were backdated to January 30 to give the appearance that they were valid.  He also asserts that some of the facts contained in the affidavit and search warrant were false.

Plaintiff alleges that KCKPD Detective Seal's January 31, 2020 arrest warrant contained false information that methamphetamine was found in Plaintiff's bedroom because Plaintiff did not live at the Lowell Avenue residence.  He asserts that a piece of mail found at the Lowell Avenue house showed that Plaintiff's address was a different one than the Lowell Avenue residence.  Thus, he alleges that Officer Seal should have included that exculpatory information in the arrest warrant.

---

[18] Although these facts are asserted in the Amended Complaint, these three individuals are not named Defendants in this case.  They are, however, named as Defendants in Plaintiff's related case, No. 22-4010.  In that case, Plaintiff brings suit against nine Defendants: three district attorneys (Dupree, Brewer, Oswald), Plaintiff's previous defense attorneys (Anthony, Russo), two Wyandotte County judges (Martinez, Cahill), Officer Ibanez, and Wyandotte County.

Plaintiff asserts that the sixteen KCKPD officers named as Defendants in this case falsely reported executing a search warrant.  Plaintiff alleges that they entered the Lowell Avenue house without a search warrant and/or probable cause.  He claims that Wyandotte County fails to train and prevent the counterfeiting and falsifying of search warrants and thus fails to prevent warrantless entries into homes.   Plaintiff also contends that there is a policy or practice of rubber stamping or counterfeiting search warrants, affidavits, and return warrants.   Plaintiff alleges that there is no oversight by Wyandotte County.  Plaintiff additionally asserts that he was denied discovery in his Wyandotte County criminal case and that Wyandotte County abandoned the case (2020-CR-000129) against him.[19]

Liberally construing the Amended Complaint, Plaintiff asserts numerous claims under 42 U.S.C. § 1983 for unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments, inclusion of false evidence or the fabrication of a search warrant, exclusion of exculpatory evidence in an arrest warrant, malicious prosecution, and failure to train or prevent false search warrants.  He also asserts Kansas state law claims under several state statutes. Plaintiff requests damages in the amount of $5 million dollars per Defendant.

## III.    Discussion

In this case, there are currently two pending motions to dismiss.  Defendant Judge Martinez brings one motion to dismiss to which Plaintiff did not respond.  The remaining Wyandotte County Defendants (the sixteen KCKPD officers, Wyandotte County, and the KCKPD) bring the other motion to dismiss.  Plaintiff responded to that motion.  The Court will address each motion in turn.

---

[19] The record reflects that on April 30, 2021, this case was dismissed pursuant to a plea agreement in which Plaintiff pleaded guilty in a separate case.  *See* Doc. 42-1 at 1–2; Doc. 38-1 at 11, 37.

A.        **Defendant Judge Martinez's Motion to Dismiss (Doc. 37)**

Plaintiff claims that the search warrant affidavit and search warrant for the January 30 search of the Lowell Avenue residence were fabricated and created on July 30, 2020, by Officer Ibanez and Judge Martinez.  Judge Martinez asserts that (1) the official capacity claims asserted against him should be dismissed due to Eleventh Amendment sovereign immunity, (2) the personal capacity claims are barred by claim preclusion or res judicata, (3) he is entitled to absolute judicial immunity, and (4) Plaintiff fails to state a claim because his allegations are conclusory and speculative.  Plaintiff did not respond to the motion.  Accordingly, the Court can treat this motion as uncontested and grant. The motion can be granted on the merits as well, as explained below.

Plaintiff has filed four cases against Judge Martinez in this Court.[20]  Two remain pending (this case and No. 20-4010), and the other two have been dismissed.  In the dismissed cases (Nos. 20-3136,[21] 21-3003), Judge Martinez was not personally named but was instead identified as "John Doe Judge, Div. 12."  The allegations, however, in all four cases, whether asserted against John Doe Judge or Judge Martinez, are substantially the same.  Specifically, Plaintiff contends that Judge Martinez fabricated or fraudulently signed a search warrant for the Lowell Avenue residence in Plaintiff's Wyandotte County criminal case.

Plaintiff's claims against Judge Martinez in this case are barred for several reasons.  First, as to Plaintiff's official capacity claims, Judge Martinez is considered a state official.[22]  Thus, the official capacity claims against him for money damages constitute an action against the State of

---

[20] Nos. 20-3136, 21-3033, 22-4009, and 22-4010.

[21] The case is ongoing, but John Doe Judge, Div. 12 was dismissed from the case.

[22] *See Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1256 (D. Kan. 2004) (first citing Kan. Const. Art. 3 § 6; and then citing K.S.A. § 20-301a).

Kansas,[23] and they are barred by Eleventh Amendment immunity.[24]  Accordingly, the Court lacks subject matter jurisdiction over any official capacity claim against Judge Martinez.

Next, Judge Martinez is entitled to absolute judicial immunity from the personal and individual capacity claims.   "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages."[25]  Furthermore, judicial immunity cannot be overcome by allegations of bad faith or malice.[26]  Rather, judicial immunity is only overcome in the following two sets of circumstances: (1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity" and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."[27]  In this case, all of Plaintiff's allegations against Judge Martinez relate to him allegedly fabricating a search warrant. There are no allegations that would trigger application of either exception to absolute judicial immunity.  Accordingly, Judge Martinez is entitled to absolute judicial immunity.

Finally, claim preclusion would bar Plaintiff's suit against Judge Martinez.  "Res judicata, or claim preclusion, precludes a party or its privies from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits."[28]  Claim preclusion requires: "(1) a final judgment on the merits in an

---

[23] Plaintiff seeks five million dollars from Judge Martinez.  There is no claim for injunctive relief and therefore the *Ex parte Young* exception to sovereign immunity is inapplicable as well.  *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (noting that one of the exceptions to sovereign immunity is when a plaintiff alleges an ongoing violation of federal law and seeks prospective or injunctive relief) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

[24] *See Sigg v. Dist. Court of Allen Cnty., Kan.*, No 11-2625-JTM, 2012 WL 941144, at *4 (D. Kan. Mar. 20, 2012) (first citing *Trujillo v. Williams*, 465 F.3d 1210, 1223 (10th Cir. 2006); and then citing *Ruiz v. McDonnell*, 299 F.3d 1173, 1180–81 (10th Cir. 2002)).

[25] *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[26] *Id.* (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

[27] *Id.* at 11–12 (citations omitted).

[28] *King v. Union Oil Co.*, 117 F.3d 443, 445 (10th Cir. 1997) (citation omitted).

earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits."[29]  If these requirements are met, res judicata is appropriate if the party had a "'full and fair opportunity' to litigate the claim in the prior suit."[30]

Here, all elements are met.  There was a final judgment on the merits in *Cline v. Kansas*,[31] and Judge Crow determined that Defendant John Doe Judge (Judge Martinez) was entitled to judicial immunity.[32]  Plaintiff and Judge Martinez were parties to both suits. Although Judge Martinez was previously identified as "John Doe Judge" in No. 21-3033, the dismissal of a John Doe defendant precludes a subsequent lawsuit brought against a named defendant who can be identified as the John Doe.[33]  Finally, there is an identity of the causes of actions in both suits. The Tenth Circuit employs "the transactional approach to the definition of 'cause of action.'"[34]  The transactional approach "includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence.  All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation."[35] Plaintiff's factual allegations differ slightly, but the same operative facts are at issue and arise from the same transaction or event.  Thus, Plaintiff's claims against Judge Martinez are also barred by res judicata.

In sum, Plaintiff's claims must be dismissed against Judge Martinez.

---

[29] *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (citation omitted).

[30] *Id.* (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999)).

[31] No. 21-3003, Doc. 12.

[32] No. 21-3003 at Doc. 11, 1–3.

[33] *See Sweat v. Rickards*, 712 F. App'x 769, 770–71 (10th Cir. 2017).

[34] *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) (citations omitted).

[35] *Id.*

**B.      Remaining Defendants' Motion to Dismiss (Doc. 42)**

The remaining Defendants seek dismissal of Plaintiff's § 1983 claims against them on several grounds: (1) Plaintiff lacks standing to make Fourth Amendment claims regarding the search of 604½ Lowell Avenue; (2) Plaintiff's claims with regard to the affidavit for the search warrant of Lowell Avenue, the execution of the search warrant, and the affidavit for the arrest warrant fail because the officers are entitled to qualified immunity; (3) Plaintiff fails to state a claim for false arrest or malicious prosecution; and (4) Plaintiff fails to state a *Monell* claim against Wyandotte County.  The Court addresses these arguments in turn and then discusses Plaintiff's state law claims.

1. **Federal Claims**

a. **Individual Capacity Claims against KCKPD Officers**

There are sixteen named KCKPD officers in Plaintiff's Amended Complaint.  Plaintiff alleges that all sixteen officers violated the Fourth Amendment and Fourteenth Amendment when searching the Lowell Avenue residence because either a warrantless search occurred without probable cause or because the search warrant contained false information.  Specifically, Plaintiff alleges that Officer Ibanez's January 29, 2020 search warrant affidavit was fabricated or contained false information.  Plaintiff also specifically asserts that Detective Seal's January 31, 2020 arrest warrant did not include exculpatory evidence and thus resulted in his false arrest and illegal incarceration.  In addition, Plaintiff asserts that Officer Ibanez and Detective Seal maliciously prosecuted him due to the alleged issues with the search warrant and arrest warrant. Finally, Plaintiff asserts that all officers falsely reported executing a search warrant and failed to provide a copy of it to Plaintiff during or after the search of the residence.  Defendant officers

assert that they are entitled to qualified immunity on the individual capacity claims asserted against them under § 1983.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[36]  To this end, qualified immunity shields government officials from liability for money damages unless the plaintiff pleads sufficient facts showing that the official violated a federal statutory or constitutional right, and that the right the official violated was "clearly established" at the time of the challenged conduct.[37]  Generally, for a right to be considered clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[38]  The Supreme Court "has held that qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[39] "[I]f a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability."[40]

Once a defendant raises the defense of qualified immunity, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" *at the time of the challenged conduct*.'"[41]  Unless the plaintiff pleads

---

[36] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[37] *Id*. at 735 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Routt v. Howard*, 764 F. App'x 762, 766–67 (10th Cir. 2019).

[38] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quoting *Zia Tr. Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010)); *see Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020) (finding right may be established by Supreme Court or Tenth Circuit precedent, or by "'consensus of cases of persuasive authority' from other jurisdictions") (quoting *al-Kidd*, 563 U.S. at 742)).

[39] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))*; see also al-Kidd*, 563 U.S. at 743.

[40] *Ziglar*, 137 S. Ct. at 1867.

[41] *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)).

facts sufficient to establish these elements, the official is entitled to qualified immunity.[42]  Courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first.[43]

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity."[44] However, "[a]sserting a qualified immunity defense via Rule 12(b)(6)," as Defendants do in this case, "subjects the defendant[s] to a more challenging standard of review than would apply on summary judgment."[45]  "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness."[46]

In this case, the Court considers Plaintiff's Amended Complaint,[47] which attaches his criminal case file from Wyandotte County.  Pursuant to Fed. R. Civ. P. 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."[48]  In addition, on a motion to dismiss, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[49]  Finally, the Court takes judicial notice of these state court records that are part of Plaintiff's Amended Complaint.[50]

---

[42] *See al-Kidd*, 563 U.S. at 735.

[43] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[44] *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)).

[45] *Id.* (citing *Thomas*, 765 F.3d at 1194).

[46] *Id.* (citing *Thomas*, 765 F.3d at 1194).

[47] Doc. 3-4.

[48] Fed. R. Civ. P. 10(c).

[49] *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[50] "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."  *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006)

### i.      Standing

Defendants contend that Plaintiff lacks standing because he does not include any allegations suggesting that he was a "social guest" at the residence and thus he could not have a reasonable expectation of privacy within the residence.  For purposes of this Order, the Court finds that Plaintiff adequately alleges that he was a social guest in the residence and has standing to assert a Fourth Amendment violation.

### ii.      Claims Based on Search Warrant Affidavit (Against Officer Ibanez)

Plaintiff asserts a violation of his Fourth Amendment rights.  Plaintiff first alleges that a warrantless search occurred because the search warrant affidavit, the search warrant, and search warrant return for the January 30 search of the Lowell Avenue residence were allegedly fabricated and created by Officer Ibanez and Judge Martinez on July 30, 2020.  This allegation is conclusory, and the documents attached to Plaintiff's Amended Complaint contradict Plaintiff's allegations.

The state court records indicate that the search warrant affidavit was signed by Officer Ibanez, under penalty of perjury, on January 29, 2020.[51]  The search warrant indicates that it was signed by Judge Martinez on January 29, 2020, at 2:00 p.m.[52]  Both of these documents have a stamp on them indicating that they were electronically filed in the Wyandotte County District

---

(citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004)); *see also Delaney v. Thompson*, No. 18-3037-SAC, 2019 WL 1317467, at *3, n.3 (D. Kan. Mar. 22, 2019) (noting that the court may take judicial notice of publicly filed records in courts on matters that directly relate to the disposition of the case before the court).

[51] Doc. 3-4 at 30–35 (search warrant application, search warrant, and search warrant return).  As noted above, Plaintiff included the state court records as part of his Amended Complaint, and they are subject to judicial notice.

[52] *Id.* at 34.

Court on July 30, 2020, at 4:13 p.m.  The only fact Plaintiff alleges to support his fabrication claim is that the documents were electronically filed with the court on July 30.

The documents, however, demonstrate that both Ibanez and Judge Martinez signed them on January 29, 2020.  In addition, the search warrant return was signed on January 31, 2020, indicating that it was executed on January 30, 2020.[53]  Plaintiff does not dispute that a search occurred on January 30, 2020—indeed, that search is central to Plaintiff's claims.  Plaintiff does not allege any additional factual allegations suggesting fabrication of the search warrant affidavit.  Thus, Plaintiff's allegations are conclusory, and the documents contradict Plaintiff's conclusory allegations about a fabricated search warrant affidavit and search warrant.

To the extent that Plaintiff alleges it was a constitutional violation to electronically file the search warrant affidavit, search warrant, and search warrant return six months after it was executed, he does not direct the Court to any law prohibiting it.  K.S.A. § 22-2512(a) states that "[w]hen property is seized under a search warrant, the officer seizing the property shall file a copy of such receipt with the magistrate who issued the search warrant.  Such copy may be filed electronically in a manner and form prescribed by the court."  There is nothing in this statute that prescribes a specific timeframe for which it must be filed.  Instead, the statute simply provides that it must be filed in the way prescribed by the court.  Plaintiff does not direct the Court, and the Court was unable to locate, any clearly established law stating that it is a violation of a statutory or constitutional right to file a search warrant affidavit, search warrant, and search warrant return approximately six months after execution of the search warrant.  Thus, any delay would not violate clearly established law.

---

[53] Doc. 3-4 at 35. The Court also notes that Plaintiff's Wyandotte County criminal case file includes at least nine different officer summaries about the search warrant execution on January 30, 2020. Doc. 3-4 at 16–24.

Plaintiff next alleges that Officer Ibanez included false information in the search warrant. He appears to argue that the inclusion of false evidence is a violation of *Franks v. Delaware*.[54] "Under *Franks*, a Fourth Amendment violation occurs if '(1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued.'"[55]

To determine whether a false statement or omitted information is material, the Court determines probable cause by "(1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes [or negates] probable cause for the warrant."[56]  "Probable cause is not a precise quantum of evidence[,] it does not, for example, require the suspect to be more likely guilty than not."[57]  "[T]he question is whether 'a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion.'"[58]  "Probable cause exists when 'the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched.'"[59]

Plaintiff alleges that the statement in the search warrant affidavit that Amanda Howard sold drugs to Marlon Fields is false.  In addition, Plaintiff alleges that the statement that the Marlon Fields interview was captured by audio/video is false.  He claims that absent the

---

[54] 438 U.S. 154 (1978).

[55] *United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020) (quoting *United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015)).

[56] *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (quoting *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015)).

[57] *Id.* at 907 (citing *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014)).

[58] *Id.* (quoting *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011)).

[59] *United States v. Harris*, 369 F.3d 1157, 1165 (10th Cir. 2004) (quoting *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1330 (10th Cir. 2003)).

audio/visual recording of the Marlon Fields' interview or Fields' statement that he bought drugs from Amanda Howard, there was no probable cause for the search warrant to issue.

The Court concludes that the search warrant affidavit would establish probable cause to search the Lowell Avenue residence even without the alleged false statements that Amanda Howard sold drugs to Marlon Fields and/or the Marlon Fields' interview was taped.[60]  Officer Ibanez averred in the search warrant affidavit that a neighbor to the residence contacted police to provide a drug complaint on January 28, 2020.  The complainant said that there was a high amount of vehicle traffic coming and going from the residence,[61] there was an unusual/foul odor coming from the residence, and that the complainant believed squatters were occupying the residence.  After this complaint, and on the same day, Officer Ibanez (along with two other officers) set up surveillance to watch the coming and going from the residence.  A truck was parked in front of the residence, and when the driver left, he committed a traffic violation.  Officers pulled the vehicle over.  The driver of the vehicle was identified as Marlon Fields, and officers observed through the window of the truck, a plastic baggie with methamphetamine.  Based on these facts alone, the search warrant affidavit provided probable cause to search the residence because there was a substantial probability that contraband or evidence of a crime would be found inside the residence from which Fields just left and which had been the subject of a drug complaint.[62]

---

[60] The Court notes again that Plaintiff included the documents related to his Kansas City criminal case as part of his Amended Complaint in this Court.  Thus, the Court has the search warrant to review.

[61] Plaintiff argues that this allegation alone is insufficient to establish probable cause.  This statement, however, is not the only fact given in the search warrant affidavit.

[62] The Court notes that in Plaintiff's Amended Complaint, he only alleges two false statements in the search warrant affidavit: 1) that Fields told the officer that Howard sold him methamphetamine, and 2) that the interview with Fields at the narcotics office was recorded.   In his briefing, however, Plaintiff appears to argue that all statements from Fields (that Fields bought or obtained methamphetamine from the residence, that Fields bought drugs from the residence seven times since December, and that the seller was a white female known as Amanda) are false.  Plaintiff's allegations and arguments continually shift, and these allegations were not in Plaintiff's Amended

In sum, Plaintiff fails to allege facts demonstrating that absent the alleged false statements that Marlon Fields purchased drugs from Amanda Howard and that the interview was recorded, the search warrant affidavit would not provide probable cause to search the residence. Thus, the alleged false statements are not material to the search warrant, the warrant would still issue, and Plaintiff fails to adequately allege a *Franks* violation. Accordingly, with regard to the search warrant affidavit, Officer Ibanez is entitled to qualified immunity because Plaintiff does not adequately allege a violation of a federal constitutional or statutory right.

### iii.    Claims Based on Arrest Warrant Affidavit (Against Detective Seal)

Plaintiff also alleges a *Franks* violation with regard to Detective Seal's January 31, 2020, arrest warrant. The same standard applicable to search warrant affidavits is applicable to arrest warrant affidavits.[63]

The arrest warrant contains numerous facts, including that "2.3 grams of methamphetamine [was] found in the southwest bedroom identified as Corey Cline's bedroom,"[64] during the January 30 search of the Lowell Avenue residence. Plaintiff contends that Detective Seal only made the connection that it was Plaintiff's bedroom because a piece of mail was found inside this bedroom.[65] Plaintiff alleges that although the piece of mail in the bedroom had his name on it, the address on this piece of mail was not the Lowell Avenue residence but instead an address on Plaintiff's identification card, a different residence. Thus, Plaintiff asserts that Detective Seal should have included this information in the arrest affidavit

---

Complaint. Nevertheless, the Court disregarded all of Fields' statements from the search warrant affidavit, and as noted above, still finds that probable cause existed to issue a search warrant for the residence.

[63] *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citing *Franks*, 438 U.S. at 171).

[64] Doc. 3-4 at 11.

[65] The Court notes that in the arrest warrant there are no statements regarding mail being found in the bedroom. It simply states that methamphetamine was found in a bedroom identified as Plaintiff's.

by stating that although officers identified the southwest bedroom of the Lowell Avenue residence as Plaintiff's bedroom due to mail being found in it, Plaintiff's mail had a different mailing address.  Plaintiff asserts that this information is exculpatory because it would show that Plaintiff did not live at the residence or have control of this bedroom.

The information about the mailing address was not material to the arrest warrant affidavit.  However, even if the mailing address information was included in the arrest warrant affidavit, Plaintiff's belongings (his mail) were found in the southwest bedroom that also contained 2.3 grams of methamphetamine.  In addition, Plaintiff was inside the residence during the time the search was executed and the methamphetamine was found.  Thus, probable cause would still exist for the arrest warrant, and Plaintiff fails to allege a *Franks* violation. Accordingly, with regard to the arrest warrant affidavit, Detective Seal is entitled to qualified immunity because Plaintiff fails to adequately allege a constitutional violation.

### iv.   Malicious Prosecution Claim (Against Officer Ibanez and Detective Seal)

Plaintiff asserts a claim for malicious prosecution against Officer Ibanez and Detective Seal.  He alleges that there was no probable cause to search the Lowell Avenue residence in which he was present because Officer Ibanez's search warrant affidavit was fabricated.  In addition, he contends that there was no probable cause to arrest him because Detective Seal's arrest warrant affidavit did not include exculpatory information about the mailing address on Plaintiff's mail found in the bedroom of the Lowell Avenue residence.

A claim for malicious prosecution under § 1983 includes the following elements: "(1) the defendant[s] caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant[s] acted with malice; and (5) the plaintiff

sustained damages."[66]  As noted above, the search warrant affidavit and arrest warrant affidavit are supported by probable cause.  Thus, Plaintiff fails to adequately allege a constitutional violation on the malicious prosecution claim.  Accordingly, this claim is dismissed.

> **v.    Claims Based on Search Warrant Execution (Against all KCKPD Officers)**

Plaintiff alleges that all KCKPD officers unreasonably searched the Lowell Avenue residence without probable cause because no search warrant existed and/or because there were false statements in the search warrant.  Plaintiff also alleges that the officers lied about executing a search warrant.  Defendants assert that they are entitled to qualified immunity.

The Court initially notes that Plaintiff's allegations are broad and lacking in specificity.  "[I]n a § 1983 action it is 'particularly important' that 'the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.'"[67]  Here, because Plaintiff's allegations regarding the execution of the search warrant are so broad, it is difficult for the Court to determine which officers that Plaintiff contends are responsible for alleged constitutional violations in the execution of the search warrant.[68]

In addition, as noted above, Plaintiff's allegations of a warrantless search are contradicted by the documents attached to the Amended Complaint that demonstrate a search warrant existed.[69]  And, as noted above, there were no material errors in the search warrant for it not to issue.  Furthermore, Plaintiff's allegations that officers lied about executing a search warrant are

---

[66] *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citation omitted).

[67] *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).

[68] Plaintiff only included specifics in his Amended Complaint about Officer Ibanez and Detective Seal.

[69] Again, as noted above, Plaintiff included, as part of this Amended Complaint, nine different officers' summaries of the execution of a search warrant on January 30, 2020.  *See* Doc. 3-4 at 16–24.

conclusory and non-specific.  Finally, Plaintiff does not allege any other facts suggesting that the officers who executed the search warrant had any reasons to doubt the invalidity of the search warrant.[70]  In sum, there are no allegations that probable cause did not exist for the officers executing the search warrant.  Thus, there are no allegations of a constitutional violation against the officers who executed the search warrant.

Finally, Plaintiff asserts that the officers did not personally give him a copy of the search warrant during the execution of it or after the search of the residence.  He claims that the officers violated K.S.A. § 22-2506 and the Fourth and Fourteenth Amendments.  Defendants contend that they are entitled to qualified immunity because they did not violate clearly established law.

At the time of the search, K.S.A. § 22-2506 provided:

> A search warrant shall be executed within 96 hours from the time of issuance.  If the warrant is executed the duplicate copy shall be left with any person from whom any things are seized or if no person is available the copy shall be left at the place from which the things were seized.[71]

There is little case law addressing this statute, but several Kansas cases have determined that the failure to provide a copy of the search warrant may be a technical irregularity, but the failure to do so does not affect the substantial rights of the accused.[72]  The search warrant return states that a duplicate copy was left as the residence where the evidence was seized on January 31, 2020.  Thus, the alleged failure by Defendants to personally provide Plaintiff with a copy of the search

---

[70] *See Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("A neutral magistrate judge's issuance of a warrant is the clearest indication that the officers acted in an objectively reasonable manner or . . . in objective good faith." (quotation marks and citations omitted)).

[71] K.S.A. § 22-2506.  The statute now provides that the warrant be executed within 240 hours.  To the extent that Plaintiff alleges a violation of state law and brings a state law claim, the Court will address this contention below.

[72] *See Kansas v. Parker*, No. 111,642, 2015 WL 5009878, at *7 (Kan. App. Ct. Aug. 14, 2015); *Kansas v. Forsyth*, 574 P.2d 241, 241 (Kan. 1978).

warrant does not violate clearly established law.[73]  Accordingly, all officers are entitled to qualified immunity.

### vi.    Conspiracy Claim (Against all KCKPD Officers)

To the extent that Plaintiff seeks to assert a conspiracy claim against all Defendants, his claim also fails.  "A conspiracy claim under § 1983 requires the allegation of 'specific facts showing an agreement and concerted action among the defendants.'"[74]  Plaintiff must also "allege facts showing an actual deprivation of a constitutional right."[75]  "This is because the essence of a § 1983 claim is the deprivation of the right rather than the conspiracy."[76]  Here, Plaintiff fails to adequately allege a deprivation of his constitutional rights.  Because of this failure to allege a deprivation of a constitutional right, he cannot adequately allege a conspiracy claim.  Thus, to the extent he includes a conspiracy claim in this case, it must be dismissed as well.

### b.    Municipal Liability Claims

### i.    Wyandotte County

Plaintiff alleges that Wyandotte County fails to train its officers on how to provide a copy of a search warrant, how to execute a search warrant, and that they must not falsify search warrants and reports.  Defendants contend that Plaintiff's claims contradict each other and are

---

[73] Plaintiff references one Oklahoma case for "clearly established law," but that case involves an entirely different Oklahoma statute regarding search warrants.  Thus, it has no applicability to the facts and the Kansas statute in this case.  Nor does it show that there was clearly established law in Kansas or the Tenth Circuit regarding providing a copy of the search warrant personally to Plaintiff.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Henderson v. Glanz*, 813 F.3d 938, 951 (10th Cir. 2015) (quotation marks and citation omitted).

[74] *Maier v. Kansas*, No. 16-3219-SAC-DJW, 2017 WL 552629, at *3 (D. Kan. Feb. 10, 2017) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 544 (10th Cir. 1998)).

[75] *Id.* (citing *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995)).

[76] *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).

conclusory.  In addition, Defendants assert that Plaintiff's allegations do not sufficiently allege

any acts or omissions by Wyandotte County that give rise to an inference that the acts or

omissions were the result of Wyandotte County's training/supervision policies or failure to

implement such policies.

The Supreme Court has made clear that "a local government may not be sued under

§ 1983 for an injury inflicted solely by its employees or agents."[77]  "[I]n other words, a

municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[78]  Instead,

"the government as an entity" may be held liable only "when execution of a government's policy

or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury."[79]  To plead municipal liability, a plaintiff must

allege "1) the existence of a municipal policy or custom, and 2) that there is a direct causal link

between the policy or custom and the injury alleged."[80]  In short, a plaintiff must adequately

allege "(1) that a municipal employee committed a constitutional violation, and (2) that a

municipal policy or custom was the moving force behind the constitutional deprivation."[81]

Here, Plaintiff's allegations fall short.  He fails to include specific allegations as to how

any policy or omission caused a constitutional violation.  Instead, he simply states that the

officers either falsely reported executing a search warrant or fabricated the search warrant, and

---

[77] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[78] *Id.* at 691; *see also Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996) ("A municipality may not be held liable under 42 U.S.C. § 1983 simply because it employs a person who violated a plaintiff's federally protected rights.").

[79] *Monell*, 436 U.S. at 694.

[80] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

[81] *Myers v. Okla. Cnty. Bd. of Cnty. Cmmr's*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694).

that there was no oversight by Wyandotte County.  Thus, Plaintiff's *Monell* claims against Wyandotte County fail, and they are dismissed.

### ii.      KCKPD

Plaintiff also names the KCKPD as a separate Defendant.   "It is well-established in Kansas that subdivisions, agencies, or departments of governmental entities do not have the capacity to sue or be sued in the absence of a statute providing otherwise."[82]  And there is no statute that confers upon Plaintiff the capacity to sue the KCKPD.  Thus, the KCKPD is not a proper party as it is not amenable to suit and is subject to dismissal.

In sum, Plaintiff fails to state a claim against all Defendants.

### 2.  State Law Claims

Plaintiff references state law and state statute violations in his Amended Complaint.  To the extent that Plaintiff asserts state law claims, the Court declines to exercise supplemental jurisdiction.  "When all federal claims have been dismissed, the court may, and usually should, decide to exercise jurisdiction over any remaining state law claims."[83]  Here, all federal claims have been dismissed, and thus the Court declines to assert supplement jurisdiction over Plaintiff's state law claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Judge Martinez's Motion to Dismiss (Doc. 37) is **granted**.

**IT IS FURTHER ORDERED** that the remaining Defendants' Motion to Dismiss (Doc. 42) is **granted**.

**IT IS SO ORDERED.**

---

[82] *Brodzki v. Topeka Police Dep't*, 437 F. App'x 641, 643 (10th Cir. 2011) (citations omitted).

[83] *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3)).  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Dated: March 6, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE